## FOUNDERS GENERAL CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.

### No. 256.

Circuit Court of Appeals, Second Circuit.

July 15, 1935.

L. HAND, Circuit Judge, dissenting in part.

Henry J. Richardson, of Washington, D. C., for petitioner.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and Morton K. Rothschild, Sp. Assts. to Atty. Gen., for respondent.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

During all the time material to the issues presented, the petitioner was the wholly owned subsidiary of the American Founders Corporation, the successor to American Founders Trust. Both were Maryland corporations. Petitioner was organized primarily as a marketing subsidiary for the securities of its parent, and affiliated and associated corporations.

American Founders Corporation filed a consolidated income tax return for the taxable period here involved in the office of the collector of internal revenue for the Second District of New York, which included the petitioner, among others, as a subsidiary. The Commissioner, upon redetermination, increased the petitioner's taxable income to the amount of $179,056.94 and was upheld in so doing by the Board of Tax Appeals. The added income thus taxed was the result of the purchase and sale by the petitioner of the capital stock of the parent which, however, did not change their affiliated status. Of the total profit in such transactions, as determined by the Commissioner, the sum of $157,234.94 was derived by the petitioner from selling capital stock of its parent which it had purchased from persons outside the affiliated group and $21,822 from the sale of such stock acquired directly from the parent when the stock was issued. The sales by the petitioner of stock, however acquired, were all to persons outside the affiliation.

The question presented as to the taxability to the petitioner of the $157,234.94 which it made in buying its parent's stock from outside persons and selling it outside the group has already been decided by this court adversely to the petitioner in Commissioner of Internal Revenue v. General Gas & Electric Corporation, 72 F.(2d) 364, and had been previously so decided by the Seventh Circuit in Commissioner of Internal Revenue v. Van Camp Packing Co., 67 F.(2d) 596. We are now asked in a somewhat elaborate argument to reconsider the matter and hold such receipts nontaxable.

While we have given this new argument the careful thought we agree it deserves, it is not convincing. We, therefore, adhere to our former decision, without further discussion, and affirm as to this point on the authority of the two cases above cited. See, also, General Gas & Electric Corporation v. Commissioner of Internal Revenue, 293 U. S. 618, 55 S. Ct. 210, 79 L. Ed. 706.

The $21,822.00 which the Commissioner added as a part of the deficiency was found by him to be profit derived in the following way. The petitioner bought from its parent 10,385 shares of the latter's preferred stock and 5,193 shares of its common stock at the time such stock was issued by the parent corporation. During the tax period it sold these shares to persons outside the group for $21,822.00 more than it paid for them.

At first glance this looks like a real profit to the petitioner which should be taxed to it, and the problem is to determine whether it is in fact a profit recognized as such by the taxing acts and applicable regulations. Were there no affiliation it would, of course, be a taxable gain. The other extreme position is to emphasize the business unity of the petitioner and the parent so much that corporate identities are lost and the stock treated as issued by the parent only when sold to outside interests by the petitioner. Under this theory, logic, at least, would require the buying back of the stock by the petitioner from the public to be treated as a retirement of it. So it would follow, contrary to our decision as to the first point herein, that a resale by the petitioner would be a reissue and the petitioner's dealings in its parent's stock would always be capital transactions resulting in no taxable profit even if it bought and sold exclusively from and to outside interests.

 That the business unity which is the basis of affiliation does not permit corporate identities to be ignored as a general rule is clearly established. See Helvering v. Post & Sheldon Corporation (C. C. A.) 71 F.(2d) 930; Commissioner of Internal Revenue v. Liberty Nat. Co. (C. C. A.) 58 F.(2d) 57. The affiliation makes the group which files of right a consolidated return a tax computing unit but leaves the individual corporations the taxpayers. Woolford Realty Co. v. Rose, 286 U. S. 319, 52 S. Ct. 568, 76 L. Ed. 1128; Commissioner of Internal Revenue v. Ben Ginsburg Co. (C.

C. A.) 54 F.(2d) 238. There would be little substance to this distinction, if for tax purposes the stock of a parent when owned by its subsidiary were to be treated, in disregard of the actual fact, the same as though it were the capital stock of the subsidiary. On the contrary, common ownership of the business by means of the requisite amount of stock ownership by the same interests to produce an affiliated group ordinarily cuts no deeper than to make taxable income computable by the elimination of certain intercompany transactions in determining both the profit and loss of the taxpayers to arrive fairly at the net taxable income of each. The parent's stock is property in the hands of the subsidiary in every practical sense as much when acquired directly from the parent as it is when acquired by the subsidiary from outside sources. It is interesting to notice in this connection that when Congress provided in section 113 (a) (12) of the Revenue Act of 1928, 26 USCA § 2113 (a) (12), that the "basis in case of property acquired by a corporation during any period, in the taxable year 1929 or any subsequent taxable year, in respect of which a consolidated return is made by such corporation under section 141 of this Act [section 2141 of this chapter], shall be determined in accordance with regulations prescribed under section 141 (b) [section 2141 (b)]," the commissioner treated such stock as this as "property" and provided in T. R. 75, article 34 (a) (1) (b), that the basis should "be determined and adjusted in the same manner as if the selling corporation and the issuing corporation had never been members of an affiliated group." Even under the regulations in force during this taxable period the amount the petitioner obtained upon the sale of the stock it acquired directly from its parent in excess of what it paid the parent for that stock would be taxable income but for one thing. That circumstance is that for stock obtained from the parent there is no cost basis from which profit can be computed.

In the hands of the parent, its capital stock has no cost basis. There can be no gain or loss to it upon the original issue and sale of its own stock. See article 66 of T. R. 74. When the petitioner acquired the stock from its parent, its basis for determining gain or loss upon its sale became that of the parent. See article 603 of T. R. 74; section 113 (a) (12) of the Revenue Act of 1928 (chapter 852, 45 Stat.

791). The stock, therefore, had no cost basis in the hands of the petitioner. For this reason the apparent profit derived by the petitioner cannot be recognized for taxation, since it cannot be computed as a profit under the law and regulations then existing. Not until the regulation above mentioned changed this for 1929 and subsequent years did it become possible in respect to such transactions to disregard affiliation in such instances in computing the taxable income of the corporate taxpayers within the group.

Decision affirmed as to the deficiency to the extent of $157,234.94 and reversed as to the remainder.

L. HAND, Circuit Judge (dissenting in part).

I was in the court which decided Commissioner of Internal Revenue v. General Gas & Electric Corporation (C. C. A.) 72 F.(2d) 364, and in spite of later doubts I will adhere to it, but I cannot see any valid distinction between shares of a parent bought from and sold to outsiders by a subsidiary, and those issued by the parent directly to the subsidiary and sold later on the market. When a company issues shares, it makes the holder a member of the group of shareholders; when it buys them, this member retires from the group and takes his share of the assets. Assuming that he gets no more than his shares are worth at that moment, the group, i. e., the corporation, has neither lost nor gained. That is the naïve view and the right view, freed from fictions; and it is the view of the regulations. Article 66, Regulations 74. I cannot now see why it should not apply equally among affiliates. The whole notion is that by common ownership of the shares corporate distinctions become obliterated; looked at from the standpoint of the real owners, the shareholders, there is only one business. The fact that the consolidated tax is apportioned among the affiliates does not matter. Especially in a case like that before us where one affiliate owns all the shares of the others it is not possible to think of more than a single group of shareholders. When we are dealing with a notion which wholly depends upon disregarding the corporate entities they ought to be disregarded throughout. The Board was of that opinion until reversed by the Seventh Circuit in Commissioner of Internal Revenue v. Van Camp Packing Co. (C. C. A.) 67 F.(2d) 596, the decision which we followed. But this mistaken theory was embodied in Regulations 75, Art. 34 (b), for the period after January 1, 1929, and I am ready to go along with it for the earlier years.

Whatever view one takes it ought to comprise shares of the parent subscribed for by the subsidiary. If we are to forget the presupposition underlying all affiliation in the first case, there is no reason to remember it in the second. If the subsidiary holds as property its parent's shares bought on the market, it equally holds such shares bought from the parent. My brothers do not challenge this, as I understand it, but they say that the case falls within section 113 (a) (12) of the Revenue Act of 1928, 26 USCA § 2113 (a) (12), and Article 603 of Regulations 74. Verbally it may, but it seems to me plain, as indeed the example in the regulation shows, that the law was thinking only of property which was acquired by one affiliate and passed on to another. As I have said, I do not believe that the parent's shares are property at all in these circumstances; but if they are, I do not feel obliged to yield obedience to the letter of those provisions when the result is to establish a groundless anomaly like this. Often it will work a hardship to take the subsidiary's subscription price as its "basis," but that cannot be helped; it is only another reason for treating the whole subject realistically. I think that the order ought to be affirmed in toto.