WOOLFORD REALTY CO., INC. *v.* ROSE, COL-
LECTOR OF INTERNAL REVENUE.

No. 582.   Argued April 19, 20, 1932.—Decided May 16, 1932.

320

*Mr. Wm. A. Sutherland,* with whom *Mr. Joseph B. Brennan* was on the brief, for petitioner.

*Mr. Whitney North Seymour,* with whom *Solicitor General Thacher, Assistant Attorney General Youngquist,* and *Messrs. Sewall Key, John H. McEvers,* and *Wilbur H. Friedman* were on the brief, for respondent.

By leave of Court, briefs of *amici curiae* were filed as follows: By *Messrs. Louis Titus* and *Henry M. Ward;* by *Messrs. Frederick L. Pearce* and *George M. Morris;* by *Messrs. Robert N. Miller* and *John G. Buchanan;* by *Messrs. Alfred S. Weill, Hugh Satterlee,* and *Albert S. Lisenby;* by *Mr. Rollin Browne;* and by *Messrs. Kingman Brewster, James S. Y. Ivins, Percy W. Phillips, O. R. Folsom-Jones,* and *Richard B. Barker.*

MR. JUSTICE CARDOZO delivered the opinion of the Court.

Petitioner and Piedmont Savings Company are separate corporations organized in Georgia. They became affiliated in 1927 when the petitioner became the owner of 96% of the Piedmont stock. In March, 1928, the two corporations

filed a consolidated income tax return for 1927 under § 240 of the Revenue Act of 1926. Revenue Act of 1926, c. 27, 44 Stat. 9, 46. During 1927, the petitioner had a net taxable income of $36,587.62, and Piedmont had suffered during the same year a net loss of $453.80. Before its affiliation with the petitioner, it had suffered other and greater losses. Its net loss in 1925 was $43,478.25 and in 1926 $410.82, a total for the two years of $43,889.07. In the assessment of the tax for 1927, the commissioner deducted from the petitioner's net income for that year the loss of $453.80 suffered by its affiliated corporation in the course of the same year. The consolidated net taxable income as thus adjusted was $36,133.82, on which a tax of $5,026.22 was assessed and paid. On the other hand, the commissioner refused to deduct the Piedmont losses suffered in 1925 and 1926 before the year of affiliation. The deductions, if allowed, would have wiped out the tax. A refund having been refused, the petitioner brought this suit against the Collector to recover the moneys paid. The District Court sustained a demurrer to the petition, 44 F. (2d) 856, and the Court of Appeals affirmed. 53 F. (2d) 821. The case is here on certiorari.

Section 240 (a) of the Revenue Act of 1926 provides that " corporations which are affiliated within the meaning of this section may, for any taxable year, make separate returns or, under regulations prescribed by the Commissioner with the approval of the Secretary, make a consolidated return of net income for the purpose of this title, in which case the taxes thereunder shall be computed and determined upon the basis of such return."

Section 240 (b) provides that " in any case in which a tax is assessed upon the basis of a consolidated return, the total tax shall be computed in the first instance as a unit and shall then be assessed upon the respective affiliated corporations in such proportions as may be agreed upon among them, or, in the absence of any such agree-

ment, then on the basis of the net income properly assignable to each. . . ."

The general principle underlying the income tax statutes ever since the adoption of the Sixteenth Amendment has been the computation of gains and losses on the basis of an annual accounting for the transactions of the year. *Burnet* v. *Sanford & Brooks Co.*, 282 U. S. 359, 363. A taxpayer who seeks an allowance for losses suffered in an earlier year, must be able to point to a specific provision of the statute permitting the deduction, and must bring himself within its terms. Unless he can do this, the operations of the current year must be the measure of his burden.

The only section of the revenue act that made allowance in 1927 for the losses of earlier years was § 206 (b), upon which this controversy hinges. Its provisions are as follows:

" If, for any taxable year, it appears upon the production of evidence satisfactory to the commissioner that any taxpayer has sustained a net loss, the amount thereof shall be allowed as a deduction in computing the net income of the taxpayer for the succeeding taxable year (hereinafter in this section called ' second year '), and if such net loss is in excess of such net income (computed without such deduction), the amount of such excess shall be allowed as a deduction in computing the net income for the next succeeding taxable year (hereinafter in this section called ' third year '); the deduction in all cases to be made under regulations prescribed by the commissioner with the approval of the Secretary."

Under that section of the statute, the losses suffered by the Piedmont Company in 1925 might have been deducted from its net income in 1926, and might thereafter, if not extinguished, have been deducted to the extent of the excess from its net income in 1927, the year in which its shares were acquired by the petitioner. But

the Piedmont Company did not have any net income in 1927. Its operations for that year resulted in a loss. There was therefore nothing from which earlier losses could be deducted, for the net income without any such deductions was still a minus quantity. The tax for the year was nothing, and the losses of other years could not serve to make it less. The petitioner would have us hold that the minus quantities for all the years should be added together, and the total turned over by the company suffering the loss as an allowance to be made to the company realizing the gain. In that view of the statute, a net loss for a taxable year becomes for the purpose of determining the burdens of affiliated corporations, though not for any other, the equivalent of a net income, and deductions which the statute has said shall be made only from net income, may, none the less, by some process of legerdemain, be subtracted from the loss.

There are two fundamental objections to this method of computation. In the first place, an interpretation of net income by which it is also a net loss involves the reading of the words of the statute in a strained and unnatural sense. The metamorphosis is too great to be viewed without a shock. Certainly the average man suffering a net loss from the operations of his business would learn with surprise that within the meaning of the Congress the amount of his net loss was also the amount of his net income. "The popular or received import of words furnishes the general rule for the interpretation of public laws." *Maillard* v. *Lawrence,* 16 How. 251, 261; *Old Colony R. Co.* v. *Commissioner,* 284 U. S. 552, 560. In the second place, the statute has given notice to the taxpayer that the aggregate of minus quantities is not to be turned over as a credit to an affiliated company, but is to be used in another way. If the loss for the first year is more than the income for the second, the excess is to be carried over to a third year, and deducted from the net

328

income, if any, returnable for that year, at which time the process of carrying over is to end. Cf. report of Senate Committee in charge of the revenue act of 1924, Senate Report No. 398, 68th Congress, 1st Session, p. 20. Obviously, the direction to apply the excess against the income of a later year is inconsistent with a purpose to allow it to an affiliated company as an immediate deduction from income of the current year. Adherence to the one practice excludes adherence to the other. Cf. Treasury Regulations 69 promulgated under the act of 1926, Arts. 634, 635, 1622. The fact is not to be ignored that each of two or more corporations joining (under § 240) in a consolidated return is none the less a taxpayer. *Commissioner* v. *Ginsburg Co.*, 54 F. (2d) 238, 239. By the express terms of the statute (§ 240 b) the tax when computed is to be assessed, in the absence of agreement to the contrary, upon the respective affiliated corporations " on the basis of the net income properly assignable to each." " The term ' taxpayer ' means any person subject to a tax imposed by this Act." Revenue Act of 1922, § 2a (9). A corporation does not cease to be such a person by affiliating with another.

The petitioner insists that a construction of § 206 (b), excluding the allowance of past losses except as a set-off against the income of the company sustaining them, is inconsistent with the accepted construction of § 234 of the same act whereby the deductions there enumerated are made from the net income exhibited by the consolidated return without reference to their origin in the business of one company or another. Section 234 provides that in computing the net income of corporations subject to a tax there shall be allowed as deductions "(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business . . . . (2) All interest paid or accrued within the taxable year on its indebtedness . . . ; (3) Taxes paid

or accrued within the taxable year . . . .; (4) Losses sustained during the taxable year and not compensated for by insurance or otherwise. . . . ; (5) Debts ascertained to be worthless and charged off within the taxable year." The points of difference between the allowances under § 206 (b) upon the one hand and those under § 234 upon the other are important and obvious. The deductions allowable under § 234 represent expenses paid or accrued or losses suffered during the same taxable year covered by the return.. They are thus included in the net income according to the fundamental concept of such income reflected in the statute, instead of falling within an exception which, irrespective of its precise extension, is a departure from the general scheme. Even more decisive is the consideration that there is nothing in § 234 prohibiting the allowance by one unit of its current losses and expenses as a deduction for the benefit of the affiliated group, nor any statement that the use to be made of them shall follow other lines. On the other hand, § 206 (b) provides, as we have seen, that the excess of loss remaining over the current net income of the taxpayer who has suffered it shall be carried over into the next year and if need be into a third, and thereafter disregarded. Subtle arguments have been addressed to us in support of the contention that the loss of one affiliated company suffered in earlier years may be allocated to the other without infraction of the rule that the loss shall be carried forward. They are not lacking in plausibility, but we cannot hold that they comport with the directions of the statute " if we take words in their plain popular meaning as they should be taken here." *United States* v. *Kirby Lumber Co.*, 284 U. S. 1, 3.

Doubt, if there can be any, is not likely to survive a consideration of the mischiefs certain to be engendered by any other ruling. A different ruling would mean that a prosperous corporation could buy the shares of one that

had suffered heavy losses and wipe out thereby its own liability for taxes. The mind rebels against the notion that Congress in permitting a consolidated return was willing to foster an opportunity for juggling so facile and so obvious. Submission to such mischiefs would be necessary if the statute were so plain in permitting the deduction as to leave no room for choice between that construction and another. Expediency may tip the scales when arguments are nicely balanced. True, of course, it is that in a system of taxation so intricate and vast as ours there are many other loopholes unsuspected by the framers of the statute, many other devices whereby burdens can be lowered. This is no reason, however, for augmenting them needlessly by the addition of another. The petitioner was prosperous in 1927, and so far as the record shows for many years before. Piedmont was unfortunate in 1927, and unfortunate in the years preceding. The petitioner, affiliating in 1927, has been allowed the loss suffered by Piedmont through the business of that year as a permissible deduction from the consolidated balance. What it claims is a right to deduct the losses that were suffered in earlier years when the companies were separate. To such an attempt the reaction of an impartial mind is little short of instinctive that the deduction is unreasonable and cannot have been intended by the framers of the statute. Analysis of the sections shows that there is no gap between what they wrote and what in reason they must have meant.

The petitioner refers us to the Revenue Act of 1928 (45 Stat. 791, 835) and to Treasury Regulations adopted thereunder as supporting its position. These provisions were adopted after the liability for the tax of 1927 had accrued, and they can have little bearing upon the meaning to be given to statutes then in force. The Revenue Act of 1928 (§ 141b) protects against unfair evasions in

the making of consolidated returns by increasing the discretionary power of the Commissioner in prescribing regulations. "The Commissioner, with the approval of the Secretary, shall prescribe such regulations as he may deem necessary in order that the tax liability of an affiliated group of corporations making a consolidated return and of each corporation in the group, both during and after the period of affiliation, may be determined, computed, assessed, collected, and adjusted in such manner as clearly to reflect the income and to prevent avoidance of tax liability." Under the authority so conferred the Commissioner has adopted the following regulation (Treasury Regulations 75, art. 41), applicable only to the taxable year 1929, and to taxable years thereafter:

"A net loss sustained by a corporation prior to the date upon which its income is included in the consolidated return of an affiliated group (including any net loss sustained prior to the taxable year 1929) shall be allowed as a deduction in computing the consolidated net income of such group in the same manner, to the same extent, and upon the same conditions as if the consolidated income were the income of such corporation; but in no case in which the affiliated status is created after January 1, 1929, will any such net loss be allowed as a deduction in excess of the cost or the aggregate basis of the stock of such corporation owned by the members of the group."

The provision in this regulation limiting the deductions to the cost or value of the stock will make it profitless hereafter to purchase stock for the purpose of gaining the benefit of deductions in excess of what is paid.

In holding that the Piedmont losses of 1925 and 1926 were properly excluded from the consolidated return, we are in accord with the preponderance of authority in the other federal courts. *Swift & Co.* v. *United States*, 38 F. (2d) 365; *Sweets Co.* v. *Commissioner*, 40 F. (2d) 436;

*Commissioner* v. *Ginsburg Co.*, 54 F. (2d) 238. Only one decision has been cited to us as favoring a different view. *National Slag Co.* v. *Commissioner*, 47 F. (2d) 846.

The judgment is

*Affirmed.*