HELVERING, Commissioner of Internal Revenue, v. POST & SHELDON CORPORATION.

No. 343.

Circuit Court of Appeals, Second Circuit.

June 18, 1934.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and John MacC. Hudson, Sp. Assts. to Atty. Gen., for appellant.

M. Z. Ottenstein, of New York City, for appellee.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

■ This appeal involves a deficiency fixed by the Commissioner in the respondent's income tax for its fiscal year ending October 31, 1928. The facts are as follows: During the years 1926, 1927 and 1928, the respondent was a corporation affiliated with a subsidiary through ownership of all its shares. It filed a single return of the consolidated income of both for each of the three years. The loss of the respondent in 1926 was $183,173.28, of the subsidiary $6,053.88; in 1927 the respondent had an income of $55,946.37, the subsidiary of $5,207.14; in 1928, their incomes were $9,993.90 and $9,377.80 respectively. In 1928 the subsidiary performed services for the respondent "in the amount of" $57,413.85 and at a cost to itself of $50,-636.70; it thus made a profit of $6,777.15 out of the respondent; it also received $540 from it as interest upon loans. In the respondent's income for 1928, as just given, these items were included as deductions, and in the subsidiary's as charges; thus if all "intercompany transactions" were excluded, the respondent's income for that year would have been $17,311.05 and the subsidiary's, $2,060.65. Under Woolford Realty Co. v. Rose, 286 U. S. 319, 52 S. Ct. 568, 76 L. Ed. 1128, the power to carry over a loss from an earlier to a later year can be used only against the separate income of each affiliate, and "intercompany transac-tions" may thus become important. In the case at bar, for example, if such transactions be eliminated and the respondent's income be thereby increased by $7,317.15, its loss for 1926, would nevertheless still absorb the sum of its incomes for 1927 and 1928. On the other hand the loss which the subsidiary could carry over from 1927 to 1928, would still be less than its income for that year, even after that were reduced by the same amount; it would lose no part of its separate deduction. Thus it became necessary to decide the issue. The Commissioner held that "intercompany transactions" should not be eliminated; the Board that they should; and the Commissioner appealed.

■■ Article 734 of Regulations 74 (Act of 1928) provides that the consolidated taxable income of affiliates shall be their combined income, "subject * * * to the elimina-tion of intercompany transactions." Except for the fact that all such transactions might not always be closed in the same year, it would make no difference for most purposes whether or not they were included. The gain of one affiliate would be the loss of another, and taking one year with another the result would be the same. It was a reasonable reg-ulation to eliminate them at once as they oc-curred, rather than to treat them as several, and as cancelling each other only when they happened to be closed in the same year. But there are occasions when affiliates, despite their consolidation, must still be treated as separate entities, and indeed it is never a pri-ori necessary to treat them otherwise. Burnet v. Aluminum Co., 287 U. S. 544, 53 S. Ct. 227, 77 L. Ed. 484. One such occasion is when they cannot agree to the division be-tween them of the single tax levied on their joint income, in which case it is to be divided "on the basis of the net income properly as-signable to each." In that division, "inter-company transactions" should be included, because affiliates are always separate taxpay-ers, and because their corporate individuality has been preserved for some deliberate pur-pose. For instance, it might happen that the whole of the combined income was profits made by one affiliate in sales to another which had itself sold at cost. The first ought to bear the whole tax, and for purposes of the divi-sion the incomes would be stated without re-gard to affiliation.

■■ It appears to us that the situation be-fore us is another such occasion, and that the power to carry over a loss from earlier years should be exercised upon the income of each affiliate computed separately; this because

932

the loss can be used only as an offset against the separate income of the affiliate who suffers it. Were it applicable "horizontally," that is, to the joint income for the following year, this would not be true; it would then be a power to be exercised as an item in a computation of the joint income from which all "intercompany transactions" would be eliminated. But being a several power only, the income against which a loss can be carried over ought to be computed in conformity with that hypothesis which alone allows it to be carried over at all. Possibly this in the end has nothing better to commend it than consistency, and that is not imperative. Indeed in recent discussions a desire for consistency appears at times to be regarded as a discreditable disposition. That is not true; some such pretension is a condition upon any jurisprudence which can be stated generally; and the implications from its entire absence would be far-reaching. It appears to us that the language of the regulations must be read in subjection to the limitations already imposed upon the "carry-over" sections; and that the position of the Treasury is a corollary of the decision in Woolford Realty Co. v. Rose, supra, 286 U. S. 319, 52 S. Ct. 568, 76 L. Ed. 1128.

Order reversed; deficiency restored.