GENERAL MACHINERY CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 70449. Promulgated February 28, 1936.

*Allen R. Smart, C. P. A.*, and *R. F. Smart, C. P. A.*, for the petitioner.

*Clay C. Holmes, Esq.*, for the respondent.

OPINION.

BLACK: It is the contention of respondent that under the law and regulations applicable to the year 1929 the period from January 1 to March 26, 1929, constitutes a "taxable year" and that the loss of the Niles Tool Works Co. for the year 1927 can not be applied beyond that "taxable year."

1218

It is the contention of petitioner that the balance of the statutory net loss of the Niles Tool Works Co. for the year 1927, over and above the amount applied as a deduction to the period January 1 to March 26, 1929, may be applied as a deduction from consolidated net income to the balance of the year 1929 on the theory that the two periods, January 1 to March 26, 1929, and March 27 to December 31, 1929, constitute one "taxable year" under the decision of the Supreme Court in *Helvering* v. *Morgan's, Inc.*, 293 U. S. 121, and the Board's decision in *Lefcourt Realty Corporation*, 31 B. T. A. 978. And if it happened that the same corporation continued to have net losses in the two next succeeding years no one received the benefit of the net loss deductions. *Woolford Realty Co.* v. *Rose*, 286 U. S. 319.

All this has been changed by the Commissioner's regulations under the 1928 Act. Article 41 (c), Regulations 75, provides:

A net loss sustained by a corporation prior to the date upon which its income is included in the consolidated return of an affiliated group (including any net loss sustained prior to the taxable year 1929) shall be allowed as a deduction in computing the consolidated net income of such group in the same manner, to the same extent, and upon the same conditions as if the consolidated income were the income of such corporation; but in no case in which the affiliated status is created after January 1, 1929, will any such net loss be allowed as a deduction in excess of the cost or the aggregate basis of the stock of such corporation owned by the members of the group.

These changes we feel we should point out as appropriate to a discussion of the issue we have here to decide.

It may be appropriate to point out at this juncture that the net loss carry-over of a corporation in a consolidated return under the 1926 Act and prior acts is different from the way it is treated under the Commissioner's Regulations 75, promulgated under the 1928 Act, applicable to the year 1929 and subsequent years. Under the 1926 Act and prior acts, the net loss of the Niles Tool Works Co. for the years 1927 and 1928 could have been applied only as a deduction against the net income of the same corporation, even though it was joined in a consolidated return with other corporations for the next succeeding two years, and if any such net losses were not absorbed by the net income of the same corporation, no further deduction could be taken by reason of such net losses.

Petitioner contends that respondent's Regulations 75, 1928 Act, went beyond the authority given in section 141 (b) in issuing article 41 (d), which states:

Any period of less than 12 months for which either a separate return or a consolidated return is filed, under the provisions of Article 13, shall be considered as a taxable year.

We held in *Lefcourt Realty Corporation, supra*, that article 41 (d) was invalid as to the taxpayer in that case, basing our hold-

ing upon the decision of the Supreme Court in *Helvering* v. *Morgan's, Inc., supra*. In *Lefcourt Realty Corporation, supra*, among other things, we said:

Under section 141(b) of the Revenue Act of 1928, the respondent is given authority, with the approval of the Secretary, to prescribe such regulations for consolidated returns as he deems necessary "to reflect the income and to prevent avoidance of tax liability." The authority does not extend to prescribing regulations which shall deny to corporations deductions from income and have the effect of increasing the taxable income. The statute prescribes that the net loss of a "taxable year" may be deducted from the net income of the succeeding taxable year and any excess from the following taxable year. Clearly if Regulations 75 did not prescribe a different definition for "taxable year" from that contained in the statute the petitioner's subsidiaries would be entitled to deduct from their net incomes of the fiscal year ended November 30, 1928, the net losses of the 12-month period ended November 30, 1927, and any excess from their net incomes of the fiscal year ended November 30, 1929. *Helvering* v. *Morgans, Inc., supra*. To the extent that Regulations 75 are in conflict with the statute and deny to corporate taxpayers deductions to which they are entitled under the taxing statute they are invalid. *Morrill* v. *Jones*, 106 U. S. 466; *Utah Power & Light Co.* v. *United States*, 243 U. S. 389; *Ramsey* v. *Commissioner*, 66 Fed. (2d) 316; certiorari denied, 290 U. S. 673.

It should be noted that Regulations 75 were promulgated prior to the decision of the Supreme Court in *Helvering* v. *Morgans, Inc., supra*. Had the respondent had the benefit of the interpretation placed upon the term "taxable year" contained in the above cited decision of the Supreme Court, presumably he would not have provided in his regulations that "any period of less than 12 months for which either a separate return or a consolidated return is filed * * * shall be considered as a taxable year."

Although, as we stated in *Lefcourt Realty Corporation, supra*, the Commissioner is given broad authority under section 141 (b), Revenue Act of 1928, to make regulations governing the filing of consolidated returns by affiliated corporations, he is not given authority to make regulations which deprive a taxpayer of rights granted to him by the statute.

This fact is made plain by the court's opinion in *Corner Broadway-Maiden Lane, Inc.* v. *Commissioner*, 76 Fed. (2d) 106. In that case the court, after quoting the particular regulation which it was there considering, said:

This attempts to enact as a regulation the commissioner's contention that an affiliated group does not include any corporation which under section 141 cannot be included in a consolidated return. It is directly contrary to the statutory definition of an affiliated group, and to that extent it must be regarded as invalid. A decision by the Board has so held in a well-reasoned opinion. *Travelers Indemnity Co.* v. *Com'r.*, 31 B. T. A. —, No. 102 [par. 407]. Although section 141 (a) conditions the making of a consolidated return on consent to regulations prescribed under subsection (b), this requirement must be limited to regulations not inconsistent with the statute, or otherwise invalid.

Cf. *American Gas & Electric Securities Corporation*, 33 B. T. A. 245.

It is true that the Court of Appeals for the District of Columbia, on rehearing in *Wishnick-Tumpeer, Inc.* v. *Helvering*, 77 Fed. (2d) 774; certiorari denied, 296 U. S. 628, has held that where an affiliated corporation joins a group, it must file or be treated as having filed a separate return between the end of its former separate return period and the commencement of the taxable year of the group, and that under article 41 (d) of Regulations 75, the separate period return means a taxable year for the purpose of net loss carry-over and that as the acceptance of such regulations was optional with the taxpayer, there was no reason to justify a claim that the regulations were invalid.

It is also true that the decision of the court on rehearing in the *Wishnick Tumpeer, Inc.*, case was after the decision of the Supreme Court in *Helvering* v. *Morgan's, Inc.*, *supra*, and discussed it and distinguished it. We have given the court's opinion in the *Wishnick-Tumpeer, Inc.*, case our most respectful and careful consideration and we think that the facts which we have before us in the instant case are distinguishable from those which were present in the *Wishnick-Tumpeer, Inc.*, case.

In the latter case there was present a change by both the parent corporation and the subsidiary corporation in their accounting periods. The importance of this change in accounting periods as it affected the question before the court, was emphasized in its opinion, as follows:

In Morgan's case the taxpayers' taxable year (parent and affiliate), both before and after the year of affiliation, was the calendar year, and the filing of returns for fractional parts of the year did not involve any change in either of the taxpayers' accounting years and, so far as the question here involved is concerned, had no effect upon the actual net income, or the amount of tax. In the instant case, Tumpeer's previous taxable year was the calendar year, and Pioneer's the fiscal year ending October 31.

The application of Tumpeer involved a complete change in accounting periods of both parent and affiliate. The consent was a concession for which the Commissioner had the right to demand terms. The conditions were that Pioneer should file a separate return for the period prior to affiliation and that such return should be considered as covering a tax-year. In effect, he said to petitioner—If the returns of Pioneer for the two months prior to affiliation and the six months of affiliation be considered as a single return, the result will be to permit its entire loss carry-over to be set off against earnings of only eight months; and this will not correctly reflect its tax for the reason that a return for that period will not correctly reflect its income.—True, to this it may be said—neither does the regulation; but, since the regulation must apply generally, it is not enough to say that in a particular case—where it is optional and not coercive—it is invalid because it deprives a taxpayer of something which otherwise he would be entitled to. An occasional hardship is

inescapable. It was the recognition of this fact, doubtless, which induced Congress in 1928 to enlarge the power of the Commissioner to make specific rules to apply when a change of accounting period like that involved here is asked as a matter of grace. It is true that in this case, as was true in Morgan's case, if Pioneer had not taken advantage of the provision authorizing consolidated returns, it would have been permitted to carry over its net loss of 1927 for the next two succeeding years; but, even in that event—the two succeeding years would have embraced two full years and not, as in the present case, a materially shorter time.

In the instant case there has been no change in accounting periods as was present in the *Wishnick-Tumpeer, Inc.*, case. The facts in the instant case in that respect are similar to what they were in *Lefcourt Realty Corporation, supra*, where we emphasized that there had been no change in the accounting period of the corporations such as was present in the *Wishnick-Tumpeer, Inc.*, case and which distinction we there discussed.

Therefore, following our decision in *Lefcourt Realty Corporation, supra*, which in turn followed the Supreme Court's decision in *Helvering* v. *Morgan's, Inc., supra*, as we interpret it, we sustain petitioner on the sole issue involved in this proceeding.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

SMITH dissents.

———

TURNER, dissenting: The holding of the majority is briefly stated in the concluding paragraph of the opinion, as follows:

Therefore, following our decision in *Lefcourt Realty Corporation, supra*, which in turn followed the Supreme Court's decision in *Helvering* v. *Morgan's Inc.*, as we interpret it, we sustain petitioner on the sole issue involved in this proceeding.

Neither of the cases relied on is in point. The Supreme Court in *Helvering* v. *Morgan's, Inc., supra*, specifically stated that the question there under consideration did not come within the regulation involved herein, and it is equally apparent that the question in *Lefcourt Realty Corporation, supra*, was also outside the regulation. An examination of the facts in the latter case clearly indicates that our discussion of article 41 (d) was not in point and not in any way determinative of the question there before us. There each of the returns covering less than a 12-month period was filed under the provisions of the Revenue Act of 1926 and regulations promulgated thereunder. The application of article 41 (d), by its own terms, is limited to returns filed under article 13 of the same regulations, and article 13 has to do only with returns filed for the year 1929 and subsequent years. I dissented in *Lefcourt Realty*

*Corporation, supra,* for the reason that on the facts it was governed by the decision of the Supreme Court in *Helvering* v. *Morgan's, Inc., supra,* in which consideration of the provisions of the Revenue Act of 1928 and the regulations thereunder was specifically excepted. Accordingly, we could not have properly considered the validity of article 41 (d) in *Lefcourt Realty Corporation, supra,* since the returns there were not filed under the Revenue Act of 1928 but under the Revenue Act of 1926.

Here for the first time we have a case which calls for consideration of the validity of article 41 (d) of Regulations 75. Section 141 (a) of the Revenue Act of 1928 extends to an affiliated group of corporations the privilege of making a consolidated return for the taxable year 1929 or any subsequent taxable year in lieu of separate returns, but allows this privilege only upon the condition that all of the corporations consent to all regulations made under section 141 (b) and prescribed prior to the making of such a return. Under section 141 (b) referred to, it is provided that the Commissioner shall prescribe such regulations as he may deem necessary in order that the tax liability of such an affiliated group, where the privilege of making a consolidated return is exercised, "may be determined, computed, assessed, collected, and adjusted in such manner as clearly to reflect the income and to prevent avoidance of tax liability." Under this provision of the statute article 41 (d) was promulgated, and our inquiry here is as to whether or not the regulation is unreasonable and inconsistent with the provisions of the statute and therefore invalid.

In the first place it should be remembered that the filing of a consolidated return is not compulsory but voluntary. It is a privilege granted by Congress, and if the privilege is exercised, the return must conform to the regulations promulgated by the Commissioner, full power having been granted by Congress to him to prescribe such regulations as may be deemed necessary for the determination, computation, assessment, and collection of the tax of the affiliated group, with such adjustments as will clearly reflect the income and prevent avoidance of tax liability. For the purposes of this case, the majority opinion has pointed out the articles of regulations with which we are here concerned. Article 41 (d) states that any period of less than 12 months for which a separate return is filed "shall be considered as a taxable year", while article 41 (c) permits the net loss of a corporation sustained prior to affiliation to be brought forward and applied against consolidated income instead of limiting the application of such a net loss to the income of the corporation which had sustained the loss. It will be noted that acceptance of these regulations and the filing of a consolidated return thereunder

bring about two results that would not be present if the returns were filed under a prior revenue act. *Helvering* v. *Morgan's, Inc., supra,* and *Woolford Realty Co.* v. *Rose,* 286 U. S. 319.

The Court of Appeals for the District of Columbia, in *Wishnick-Tumpeer, Inc.* v. *Helvering,* 77 Fed. (2d) 774, had before it the question we have here, and sustained the respondent, affirming our opinion in the same case at 27 B. T. A. 548. Considering the effect of the decision of the Supreme Court in *Helvering* v. *Morgan's, Inc., supra,* the court said:

> The ambiguity which the Supreme Court found in the 1926 Act, and resolved in favor of the taxpayer, is wholly absent in the 1928 Act and Treasury Regulations, when considered together; for in the latter there is the express and positive command that the fractional part of the year for which the return is made "shall be considered as a taxable year." And if Congress had the right to limit or restrict the carry-over privilege, as to which there can be but one answer, it had the same right to confer that power on the Commissioner. Congress unquestionably inserted the new provisions in the 1928 Act to clarify administrative procedure under the former act and to substitute, in place of a definite provision, rules to be made by the Commissioner which would be optional in the case of corporations changing from separate to consolidated returns and, sometimes, involving in the change wholly different tax periods; and, in this view, petitioner's case is brought precisely within the scope of the purpose. * * *
>
> * * * since the regulation must apply generally, it is not enough to say that in a particular case—where it is optional and not coercive—it is invalid because it deprives a taxpayer of something which otherwise he would be entitled to. An occasional hardship is inescapable. It was the recognition of this fact, doubtless, which induced Congress in 1928 to enlarge the power of the Commissioner to make specific rules to apply when a change of accounting period like that involved here is asked as a matter of grace. It is true that in this case, as was true in *Morgan's* case, if Pioneer had not taken advantage of the provision authorizing consolidated returns, it would have been permitted to carry over its net loss of 1927 for the next two succeeding years; but, even in that event—the two succeeding years would have embraced two full years and not, as in the present case, a materially shorter time.
>
> All of this we mention as giving substance to our assumption that Congress, in the 1928 provisions, had a definite purpose in view. The regulations authorized to carry out the purpose were intentionally made optional. An affiliated corporation could take them or leave them, as appeared to it advantageous. This was as nearly a fair and equitable arrangement as the difficulties inherent in the situation made possible; and we can think of no reason, and certainly can find none in *Morgan's* case, to justify our saying that the regulations so made are invalid.

The majority opinion undertakes to distinguish the instant case from that of *Wishnick-Tumpeer, Inc.* v. *Helvering, supra,* by pointing out that there a change of accounting period was involved, while no such change was present in the instant case. Although the Supreme Court in its concluding paragraph in *Helvering* [v. *Morgan's, Inc., supra,* indicated that it was not deciding a case which

involved a change of accounting period and the Court of Appeals, in *Wishnick-Tumpeer, Inc.* v. *Helvering, supra*, mentioned that comment of the Supreme Court, there is nothing whatever in either opinion which suggests or points to any distinction between the case we have here and that of *Wishnick-Tumpeer, Inc.* v. *Helvering, supra*, in so far as the Revenue Act of 1928 or the regulations thereunder are concerned, and, in my opinion, no such distinction can be made. A change of accounting period is voluntary and where such change is made the filing of a return for a period of less than 12 months is required. This is necessary for the proper reflection of the taxpayer's income from and after such change. The filing of consolidated returns is also voluntary by specific terms of the statute. But if an affiliated group does file a consolidated return and a member thereof has become affiliated within the taxable year of the parent corporation, a return is required of such new member for a period of less than 12 months, since only the income received by such new member from and after the date of affiliation may be included in the consolidated return. Summary consideration only of the purpose and effect of consolidated returns is needed to show that a return for less than 12 months, in the case of such a corporation, is also necessary for the proper reflection of income. There is nothing whatever in the language of the revenue act itself or in the language of article 41 (d) of the regulation which suggests or intimates that any distinction is made or intended between returns for periods of less than 12 months in either of the cases just described, and from an administrative standpoint and for the proper reflection of income, no reason has been advanced to indicate that such returns are not as essential in one case as in the other.

Accordingly, in my opinion, the reasoning of the court in *Wishnick-Tumpeer, Inc.* v. *Helvering, supra*, is equally applicable to the facts present in this case. I can see no reasonable basis for distinction and think that it should be followed here.

It is my further opinion that if Congress did not and could not confer upon the Commissioner the power to promulgate a regulation such as that found in article 41 (d) and which, as prescribed, provides a departure from the rule under the Revenue Act of 1926, as interpreted by the Supreme Court in *Helvering* v. *Morgan's, Inc., supra*, we must also find that Congress did not confer upon the Commissioner the power to promulgate a regulation such as that found in article 41 (c), which grants to affiliated corporations accepting the regulations and filing returns thereunder the privilege of applying the net loss of one of its members against the consolidated income, which is contrary to the rule under the Revenue Act of 1926 as interpreted by the Supreme Court in *Woolford Realty Co.* v.

*Rose, supra.* Insofar as both of the cases mentioned are concerned the statute is the same in the 1928 Act as in the 1926 Act, except for the power conferred upon the Commissioner by the 1928 Act to make the regulations of which article 41 (c) and article 41 (d) are a part.

For the reasons stated, I respectfully dissent from the opinion of the majority herein.