## S. SLATER & SONS, Inc., v. WHITE, Formerly Collector of Internal Revenue.

### No. 3629.

Circuit Court of Appeals, First Circuit.

May 16, 1941.

Norris Darrell, of New York City (George R. Stobbs, of Worcester, Mass., and Sullivan & Cromwell, of New York City, on the brief), for appellant.

Louise Foster, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and Fred J. Neuland, Sp. Assts. to Atty. Gen., and Edmund J. Brandon and C. Keefe Hurley, both of Boston, Mass., on the brief), for appellee.

Before MAGRUDER and MAHONEY, Circuit Judges, and HARTIGAN, District Judge.

840

MAGRUDER, Circuit Judge.

Plaintiff appeals from a judgment for the defendant in an action to recover back certain corporate income taxes alleged to have been wrongfully assessed and collected for the taxable year 1929. The question is how losses and gains of affiliated companies—particularly, a preaffiliation loss of one of the companies in 1926—are to be offset in relation to one another in a consolidated return.

The facts are simple. S. Slater & Sons, Inc., a Massachusetts corporation,[1] had a loss for the year 1926. In 1927 two subsidiary companies, Slater Company, Inc., and Slater Mills, Inc., were incorporated under the laws of Massachusetts, all of the stock of each subsidiary being owned directly by S. Slater & Sons, Inc. Admittedly the three corporations were an "affiliated group" within the meaning of the revenue acts. The separate net incomes and losses of each company before taking into account net losses carried forward from prior years (the losses being indicated by asterisks) were as follows:

file consolidated returns.[2] Also, from 1921 to 1931 the acts gave taxpayers the benefit of a two-year carry-over of net losses to offset net gains in subsequent years.[3] For example, § 240(a) of the Revenue Act of 1926, 44 Stat. 9, 46, 26 U.S.C.A. Int.Rev.Acts, page 191, provided:

"Corporations which are affiliated within the meaning of this section may, for any taxable year, make separate returns or, under regulations prescribed by the Commissioner with the approval of the Secretary, make a consolidated return of net income for the purpose of this title, in which case the taxes thereunder shall be computed and determined upon the basis of such return. If return is made on either of such bases, all returns thereafter made shall be upon the same basis unless permission to change the basis is granted by the Commissioner."

And § 206(b) of the same act, 44 Stat. 9, 17, 26 U.S.C.A. Int.Rev.Acts, page 155, provided:

"If, for any taxable year, it appears upon the production of evidence satisfactory to the Commissioner that any taxpayer has

|  | 1926 | 1927 | 1928 | 1929 |
|---|---|---|---|---|
| Slater & Sons | $664,639.99* | $212,128.47 | $488,743.92 | $ 20,996.10* |
| Slater Co. | — | 106,127.28* | 51,152.35* | 125,223.57 |
| Slater Mills | — | 163,038.93* | 49,892.23 | 105,382.85 |

Before considering opposing contentions as to how these basic figures are to be manipulated in determining the consolidated net income or loss for 1929, brief reference must be made to the general problem as it arose under earlier revenue acts.

Since 1918, the revenue acts have permitted affiliated groups of corporations to

sustained a net loss, the amount thereof shall be allowed as a deduction in computing the net income of the taxpayer for the succeeding taxable year (hereinafter in this section called 'second year') and if such net loss is in excess of such net income (computed without such deduction), the amount of such excess shall be allowed as a deduction in computing the net

[1] The plaintiff is a Delaware corporation of the same name which in 1936, upon the complete liquidation of S. Slater & Sons, Inc., of Massachusetts, became vested with whatever rights of action the Massachusetts corporation might have against the Collector. It will not be necessary in the opinion further to differentiate between these two corporations.

[2] Revenue Acts of 1918, 1921, § 240, and 1924, 1926, § 240, 40 Stat. 1057, 1081, 42 Stat. 227, 260 and 43 Stat. 253, 288; 44 Stat. 9, 46, 26 U.S.C.A.Int.Rev. Acts, pages 44, 191; Revenue Acts of 1928 and 1932, § 141, 45 Stat. 791, 831, 47 Stat. 169, 213, 26 U.S.C.A.Int.Rev. Acts, pages 396, 532. In 1934 consolidated returns were made available only to

railroad companies. Revenue Act of 1934, § 141, 48 Stat. 680, 720, 26 U.S.C. A.Int.Rev.Acts, page 715. During 1917 consolidated returns were required by regulation in the computation of excess profits taxes. Reg. 41, Arts. 77, 78.

[3] Revenue Act of 1921, § 204, 42 Stat. 227, 231; Revenue Acts of 1924 and 1926, § 206, 43 Stat. 253, 260, 44 Stat. 9, 17, 26 U.S.C.A.Int.Rev.Acts, pages 10, 155; Revenue Act of 1928, § 117, 45 Stat. 791, 825, 26 U.S.C.A.Int.Rev.Acts, page 388. In 1932 the carry-over was limited to one year, Revenue Act of 1932, § 117, 47 Stat. 169, 207, 26 U.S.C.A.Int. Rev.Acts, page 524. The provision was eliminated by § 217 of the National Industrial Recovery Act, 48 Stat. 195, 208.

income for the next succeeding taxable year (hereinafter in this section called 'third year'); the deduction in all cases to be made under regulations prescribed by the Commissioner with the approval of the Secretary."

But the 1926 act and its predecessors did not spell out the application to consolidated returns of the two-year carry-over provision for net losses sustained by "any taxpayer"; nor were the Treasury regulations explicit on the point.

It was, therefore, inevitable that much litigation would arise out of situations like that presented in the case at bar. It was eventually settled by the Supreme Court in Woolford Realty Co. v. Rose, 1932, 286 U.S. 319, 52 S.Ct. 568, 76 L.Ed. 1128, that an affiliated group could not deduct from its income for any one year a preaffiliation loss of a single member of the affiliated group in excess of the income realized by that particular member during the taxable year in question. Thereafter, various circuit courts of appeals, on the basis of the reasoning in the Woolford case, held that in consolidated returns an individual-taxpayer theory should be applied throughout in respect to the two-year carry-over of net losses. That is to say, the net loss of a member of an affiliated group suffered during a given taxable year could be deducted (a) from the consolidated net income of the entire group for the taxable year in which the loss occurred, or (b) from the income during the two subsequent taxable years of the affiliate which suffered the loss. However, where a member of an affiliated group suffered a loss during one taxable year which could not be fully used up as a deduction from the income of its affiliates during that same taxable year, the loss could only be carried over against its own net income during the two subsequent years and could not be applied as a deduction against the income of its affiliates in later taxable years. Delaware & Hudson Co. v. Commissioner, 2 Cir., 1933, 65 F.2d 292, certiorari denied 290 U.S. 670, 54 S.Ct. 89, 78 L.Ed. 579; New Castle Leather Co. v. Commissioner, 2 Cir., 1933, 65 F.2d 294; Beneficial Loan Society v. Commissioner, 3 Cir., 1933, 65 F.2d 759, certiorari denied 290 U.S. 677, 54 S.Ct. 101, 78 L.Ed. 584; Seiberling Rubber Co. v. Commissioner, 6 Cir., 1934, 70 F.2d 651, certiorari denied 293 U.S. 611, 55 S.Ct. 142, 79 L.Ed. 701; Helvering v. Post & Sheldon Corp., 2 Cir., 1934, 71 F.2d 930; Corco Oil Refining Corp. v. Helvering, 1934, 63 App.D.C. 309, 72 F.2d 177; Taylor-Wharton Iron & Steel Co. v. Commissioner, 3 Cir., 1934, 74 F.2d 300.

Therefore, if the Revenue Act of 1928 had wrought no change, the Woolford case and the above-cited cases following it would have required a holding that S. Slater & Sons, Inc., and its affiliated companies had no consolidated net income for 1929 subject to tax. The $664,639.99 preaffiliation loss of S. Slater & Sons, Inc., would have been used up in offsetting completely that company's gain of $212,128.47 in 1927, and in partially offsetting that company's gain of $488,743.92 in 1928, leaving a balance of net income for 1928 of $36,232.40. But this preaffiliation loss could not otherwise have been utilized, and would not in any degree have been reflected in the consolidated return for 1929. Likewise the loss of Slater Company, Inc., of $106,127.28 for 1927 would not have been used at all in 1928 because that company had a net loss in that year, but would have been applied in full against that company's gain of $125,223.57 for 1929. This would have left a balance of income of Slater Company, Inc., for 1929 in the sum of $19,096.29. The $51,152.35 loss of Slater Company, Inc., for 1928 would have first been applied to wipe out the remaining $36,232.40 gain of its affiliate S. Slater & Sons, Inc., for that same taxable year, leaving a remainder $14,919.95 of Slater Company's 1928 loss to be applied pro tanto to the $19,096.29 balance of Slater Company's gain for 1929. That would have left Slater Company with a gain of $4,176.34 for 1929. Finally, the $163,038.93 loss of Slater Mills, Inc., in 1927 would have been available only to the extent of offsetting the $49,892.23 gain of that company in 1928, and its $105,382.85 gain in 1929. Thus the consolidated return for 1929 would have shown a loss of $20,996.10 by S. Slater & Sons, Inc., a gain of $4,176.34 by Slater Company, and no gain or loss by Slater Mills, Inc. There would have been no consolidated net gain for the group and no tax would have been due for that year.

But the Revenue Act of 1928 did radically alter the picture.

Section 141 of that act, 45 Stat. 791, 831, 26 U.S.C.A. Int.Rev.Acts, page 396, provided in part as follows:

"§ 141. Consolidated Returns of Corporations—1929 and Subsequent Taxable Years.

"(a) Privilege to File Consolidated Returns. An affiliated group of corporations shall, subject to the provisions of this section, have the privilege of making a consolidated return for the taxable year 1929 or any subsequent taxable year, in lieu of separate returns. The making of a consolidated return shall be upon the condition that all the corporations which have been members of the affiliated group at any time during the taxable year for which the return is made consent to all the regulations under subsection (b) prescribed prior to the making of such return; and the making of a consolidated return shall be considered as such consent. In the case of a corporation which is a member of the affiliated group for a fractional part of the year the consolidated return shall include the income of such corporation for such part of the year as it is a member of the affiliated group.

"(b) Regulations. The Commissioner, with the approval of the Secretary, shall prescribe such regulations as he may deem necessary in order that the tax liability of an affiliated group of corporations making a consolidated return and of each corporation in the group, both during and after the period of affiliation, may be determined, computed, assessed, collected, and adjusted in such manner as clearly to reflect the income and to prevent avoidance of tax liability."

The report of the Senate Finance Committee sets forth quite explicitly the broad scope and purpose of the power delegated to the Commissioner *"to prescribe regulations legislative in character"* (italics ours). Among other things, that report stated (Sen.Rep.No. 960, 70th Cong., 1st Sess.(1928) p. 5):

"Many difficult and complicated problems, however, have arisen in the administration of the provisions permitting the filing of consolidated returns * * * Frequently, the particular policy is comparatively immaterial, so long as the rule to be applied is known. The committee believes it to be impracticable to attempt * * * to prescribe the various detailed and complicated rules necessary to meet the many differing and complicated situations. Accordingly, it has found it necessary to delegate power to the commissioner to prescribe regulations legislative in character covering them. * * *

"Among the regulations which it is expected that the commissioner will prescribe are * * * (3) the extent to which and the manner in which net losses sustained by a corporation before it became a member of the group shall be deducted in the consolidated return; and the extent to which and the manner in which net losses sustained during the period for which the consolidated return is filed shall be deducted in any taxable year after the affiliation is terminated in whole or in part * * *."

Pursuant to § 141(b) above, the Commissioner on January 3, 1929, issued Regulations 75, which dealt exclusively with consolidated returns, and were expressed to be "applicable to the taxable year 1929 and subsequent taxable years". Article 41 of these regulations reads in part:

"Art. 41—Net Losses.

"(a) *Consolidated Net Loss for 1929 or subsequent Taxable Year.*

"A net loss sustained by an affiliated group for any taxable year (that is, 1929 or any subsequent taxable year) for which a consolidated return is made or is required shall be allowed, in the same manner, to the same extent, and upon the same conditions as if the group were a single corporation, as a deduction (1) in computing the consolidated net income of such group for the succeeding taxable years, or (2) if consolidated returns are not made or required, then in computing the net income of the parent corporation for such years, or (3) if the parent becomes a subsidiary in another affiliated group which makes a consolidated return, then in computing the consolidated net income of such other group for such years. In no case will any such net loss be allowed in computing the net income of a subsidiary (whether on a separate return or a consolidated return of another affiliated group of which the subsidiary has become a member).

"(b) *Consolidated Net Loss for Years prior to 1929.*

"A consolidated net loss sustained for either of the two taxable years immediately preceding the taxable year 1929, in the case of a parent corporation and one or more other corporations which made a consolidated return for such year, shall, if such parent is a member of an affiliated group which makes a consolidated return for the taxable year 1929 or the next succeeding taxable year, be allowed as a deduction in computing the consolidated net income of such group for 1929 or the next succeeding taxable year in the same manner, to the same extent, and upon the

same conditions as if such group were a single corporation and the same taxpayer, except that no part of any such consolidated net loss which has previously been allowed, or is allowable, as a deduction in computing the net income of any such corporation which is not a member of such affiliated group during 1929 or the next succeeding taxable year, shall be allowed as a deduction in computing such consolidated net income for 1929 or the next succeeding taxable year. In no case will any such consolidated net loss be allowed in computing the net income for the taxable year 1929 or the next succeeding taxable year of a subsidiary (whether on a separate return or a consolidated return of another affiliated group) which during any part of the taxable year 1929 or the next succeeding taxable year is a member of an affiliated group for which a consolidated return is made.

"(c) *Net Loss Sustained by Separate Corporation Prior to Consolidated Return Period.*

"A net loss sustained by a corporation prior to the date upon which its income is included in the consolidated return of an affiliated group (including any net loss sustained prior to the taxable year 1929) shall be allowed as a deduction in computing the consolidated net income of such group in the same manner, to the same extent, and upon the same conditions as if the consolidated income were the income of such corporation; but in no case in which the affiliated status is created after January 1, 1929, will any such net loss be allowed as a deduction in excess of the cost or the aggregate basis of the stock of such corporation owned by the members of the group."

Under Article 41 the Commissioner determined the consolidated net income of the affiliated group for 1929 as follows (losses being indicated by asterisks):

The Government explains the above computation as follows: "* * * when the income of the group for 1927 is considered without regard to the prior year, it actually had a consolidated net loss of $57,037.74 and so had no income for that year from which the loss of $664,639.99, sustained by the parent company in 1926, could be deducted. Moreover, since the consolidated net income of the group for 1928 was only $487,483.80, there was insufficient income in that year to offset the loss of 1926, and the remainder cannot be deducted, in the computation here, since Section 117 (b) of the Revenue Act of 1928 [26 U.S.C.A. Int.Rev.Acts, page 388] * * * does not allow a net loss to be carried forward for more than two succeeding years. Thus the consolidated net income for 1929 amounted to $209,610.32 and when the consolidated net loss of 1927 is subtracted from that sum, we have a taxable consolidated net income of $152,572.58 as shown above." A deficiency tax was assessed accordingly, which was paid by S. Slater & Sons, Inc. Upon disallowance of a timely claim for refund, the present suit was brought.

We think the Commissioner correctly applied Article 41 of the regulations to the facts of the present case. A consistent adoption of the single-taxpayer theory, with certain safeguards to prevent tax evasion, seems to be characteristic of subsections (a), (b) and (c) of Article 41, read in their natural and ordinary sense. The single-taxpayer theory has the merit of simplicity, and it also conforms to business reality. Disregarding corporate forms, the business is a practical unit, which S. Slater & Sons, Inc., might just as well have carried on through branches or departments instead of through wholly-owned subsidiary corporations. In fact, unless the single-taxpayer theory were applied, the non-recognition of gain or loss in inter-com-

|  | 1926 | 1927 | 1928 | 1929 |
|---|---|---|---|---|
| Slater & Sons income or loss | $664,639.99* | $212,128.47 | $488,743.92 | $ 20,996.10* |
| Slater Co. income or loss... | — | 106,127.28* | 51,152.35* | 125,223.57 |
| Slater Mills income or loss | — | 163,038.93* | 49,892.23 | 105,382.85 |
| Combined income or loss... | $664,639.99* | $ 57,037.74* | $487,483.80 | $209,610.32 |
| Less: unused net loss carried forward from prior year .................. |  |  | 487,483.80* | 57,037.74* |
| Final consolidated net income or loss........... |  | $ 57,037.74* | 0 | $152,572.58 |

844

pany transactions in computing consolidated net income, as provided in Article 31 (a) of Regulations 75,[4] would often work manifest hardship. Cf. Helvering v. Post & Sheldon Corp., 2 Cir., 1934, 71 F.2d 930.

Challenging the Government's method of computation, the taxpayer contends that the basic figures should be rearranged in quite a different pattern in determining whether there was any consolidated net income for 1929, as follows (losses being indicated by asterisks):

in 1928 to offset Slater Mills' 1928 net income, and the consolidated net loss sustained in 1928 was $14,919.95, making a total of unused consolidated net losses sustained for the two years of $234,193.93. $209,-610.32 of the unused consolidated net losses so sustained in 1927 and 1928, are carried forward and deducted from the combined 1929 income in accordance with Article 41(b), namely, as though the affiliated corporations constituted a single taxpayer in 1929."

| | 1926 | 1927 | 1928 | 1929 |
|---|---|---|---|---|
| **SLATER & SONS:** | | | | |
| Income or loss................. | $664,639.99* | $212,128.47 | $483,743.92 | $ 20,996.10* |
| Less: unused 1926 preaffiliation net loss carried forward..... | 0 | 212,128.47* | 452,511.52* | |
| Net income or loss for consolidation ....................... | — | 0 | $ 36,232.40 | |
| **SLATER CO.:** | | | | |
| Income or loss.................... | — | 106,127.28* | 51,152.35* | 125,223.57 |
| Less: unused net loss carried forward from prior year...... | — | 0 | 0 | |
| Net income or loss for consolidation | | $106,127.28* | $51,152.35* | |
| **SLATER MILLS:** | | | | |
| Income or loss ................. | — | 163,038.93* | 49,892.23 | 105,382.85 |
| Less: unused net loss carried forward from prior year...... | — | 0 | 49,892.23* | |
| Net income or loss for consolidation ....................... | | 163,038.93* | 0 | |
| Combined income or loss (1929) | | | | 209,610.32 |
| Less: unused consolidated net loss carried forward from 1927 and 1928................... | | | | 209,610.32* |
| Consolidated net loss.......... | | $269,166.21* | $ 14,919.95* | 0 |

The above tabulation by the taxpayer is a distinctly hybrid affair. The taxpayer explains that net losses are carried forward and consolidated net income for 1927 and 1928 determined on a separate-taxpayer basis in the manner required by the Woolford case and the decisions following it, under the law in force before the change inaugurated by the Revenue Act of 1928 and the regulations issued thereunder. "Thus", the taxpayer continues, "the consolidated net loss sustained in 1927 was $269,166.21, of which $49,892.23 was used

Plaintiff argues that the "consolidated net loss sustained" in 1927 and 1928, the unused balance of which Article 41(b) directs to be deducted from 1929 combined income, is the "consolidated net loss" at the close of each of those years that is determined to have been sustained under the law then existing as interpreted by the court decisions above referred to; and that nothing in Article 41(b) or elsewhere in the regulations "permits a retroactive redetermination of such losses in computing 1929 income", which is what the Govern-

4 "Art. 31.—Consolidated Net Income.

"(a) *Definition*.

"Except as otherwise provided in these regulations, the consolidated net income of an affiliated group, which makes or is required to make a consolidated return for any taxable year, shall be the aggregate of the gross income of each of the members of such group less the aggregate of the allowable deductions of each of such members, except that gain or loss will not be recognized upon transactions between members of the group (referred to in these regulations as 'intercompany transactions')."

ment in effect is now insisting upon, according to the taxpayer.

The trouble with this argument is that the Woolford case and the other decisions construing the earlier revenue acts did not come down until several years after the enactment of the Revenue Act of 1928 and the issuance of Regulations 75 thereunder. The rules laid down in those decisions therefore could hardly be used as a basis for interpreting what the Commissioner meant by the phrase "consolidated net loss" used in Article 41(b) of the regulations. In addition to that, under those decisions, which applied a consistent separate-taxpayer theory for purposes of the two-year carry-over, there was no occasion to compute a "consolidated net loss", as we have above indicated. If the basic figures were moved around so as to arrive at a so-called "consolidated net loss", the consolidation would only have to be broken down again into its integral parts to apply the two-year carry-over on a separate-taxpayer basis as required by the decisions referred to.

It can hardly be denied that if the basic figures given above had related to the years 1929, 1930, 1931 and 1932, respectively, and if the tax for 1932 had been in question, the phrase "consolidated net loss" as used in Article 41(b) would have meant what the Government now says it means. But the contention is that "consolidated net loss" is to have quite a different meaning, and to be arrived at by quite a different mode of calculation, as applied to the carry-over of losses from 1927 and 1928 in computing the tax for 1929. It does not seem to us that Article 41(b) is susceptible of any such curious construction.

As we see it, the Government's contention does not in any invidious sense involve a "retroactive redetermination" of consolidated net losses. Section 141(b) of the Revenue Act of 1928 delegated to the Commissioner power to prescribe regulations legislative in character, within properly defined limits and subject to the standards laid down by Congress. The regulations issued pursuant thereto put into force a new method of accounting which was admittedly a marked departure from the old. In prescribing rules for the computation of taxes for future years (1929 and thereafter), where those taxes were to be affected under the two-year carry-over provision by events taking place during previous taxable years, the Commissioner had discretionary authority to devise a new method of looking at past profits and losses of the affiliated companies. The "redetermination" which the taxpayer objects to is a matter of extreme simplicity, involving merely a reshuffling of figures which the taxpayer must already have arrived at.

We have no doubt that § 141(b) of the Revenue Act of 1928 constitutes a proper delegation of power to the Commissioner, and that Article 41 of Regulations 75 as here interpreted and applied constitutes a proper exercise of the Commissioner's delegated power. See Woolford Realty Co. v. Rose, 286 U.S. 319, 330, 331, 52 S.Ct. 568, 76 L.Ed. 1128; Charles Ilfeld Co. v. Hernandez, 292 U.S. 62, 65, 54 S.Ct. 596, 78 L.Ed. 1127. As was stated in the Senate committee report from which we have quoted above: "Frequently, the particular policy is comparatively immaterial, so long as the rule to be applied is known." That would seem to be the case here. Article 41 will sometimes work to the advantage of the taxpayers and sometimes to their disadvantage; if in a particular case it works to their disadvantage, an affiliated group which files a consolidated return cannot in logic object to a result which follows from a consistent application of the single-taxpayer theory. The problem presented in the case at bar is no longer an important one because in 1933 Congress withdrew the privilege of carry-over of net losses, and in 1934 limited the the availability of consolidated returns to railroad corporations.[5]

The judgment of the District Court is affirmed.

---

[5] See footnotes 2 and 3, supra.