**FORD MOTOR COMPANY, Petitioner,**

v.

**NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION** and Department of Transportation, United States of America, **Respondents.**

**No. 72-1179.**

United States Court of Appeals, Sixth Circuit.

Feb. 2, 1973.

---

Robert G. Stachler, Taft, Stettinius &
Hollister, Cincinnati, Ohio, Lloyd N. Cut-
ler, John H. Pickering, William R. Perlik,
Timothy N. Black, Wilmer, Cutler &
Pickering, Washington, D. C., on brief,
for petitioner-appellant.

Harlington Wood, Jr., Asst. Atty. Gen.,
Walter H. Fleischer, Raymond D. Bat-
tocchi, Attys., Dept. of Justice, Wash-
ington, D. C., on brief, for respondents-
appellees.

Before WEICK, PECK and MILLER,
Circuit Judges.

JOHN W. PECK, Circuit Judge.

This case is here on petition of the
Ford Motor Company for a review of an
order of the National Highway Traffic
Safety Administration of the Depart-
ment of Transportation, adopted pursu-
ant to the National Traffic and Motor

Vehicle Safety Act of 1966, 15 U.S.C. §§
1381–1431, and published as "Notice 16,"
37 F.Reg. 3911 (Feb. 24, 1972). At is-
sue is the effect of this Court's decision
in Chrysler Corporation, et al. v. Depart-
ment of Transportation, et al., 472 F.
2d 659 (6th Cir., 1972) (hereinafter
Chrysler) upon subsequently adopted
amendments to Automobile Safety
Standard 208. In that case, this
Court held that the anthropomorphic
test device specified in Standard 208, as
defined in SAE Recommended Practice
J963, was not objective as required by
the Act; accordingly, paragraph S8.1.8
was declared invalid, and the proceeding
was remanded to the Agency with in-
structions that any further specifications
for test devices be made in objective
terms. The effect of that decision was
an indefinite postponement of all op-
tions open to a manufacturer after Au-
gust 15, 1973, except for the "third op-
tion," here under review. In footnote 5
of that opinion, we noted that several
petitions for review of Notice 16 had
been filed, but that those cases had not
yet been argued to the Court. This is
the first of those petitions to be con-
sidered, and both parties to this proceed-
ing have conceded that the disposition
of Chrysler is determinative of the prin-
cipal contentions advanced in the pres-
ent case.

The history of the rulemaking pro-
ceeding which produced Standard 208 in
its present form is recounted in detail
in Chrysler, and need not be repeated
here. For the purposes of this case, it is
sufficient to note that Standard 208 now
requires, for the period between August
15, 1973 and August 14, 1975, that a
manufacturer provide seat belts with ig-
nition interlocks [1] for all front seat pas-
sengers, plus non-interlocked belts at oth-
er seating positions. Two different

---

[1]. The interlock system must prevent the
starting of the engine if any front seat
occupant does not have his belt fastened.
The system is sequential, in that the oc-
cupant must be seated before the belt
is fastened. In addition, the unfasten-
ing of a belt after the engine is started
may not stop the engine, but must activate
a light-sound warning system. The engine
may be restarted within three minutes of
shutoff without interference by the inter-
lock system, and the interlock may be
overridden by a switch in the engine com-
partment which will defeat the interlock
only when it is operated after each period
of engine operation.

methods are provided for testing the belts for compliance. Belts for the rear seat passengers and the front seat center passenger, when such seating positions are provided, must meet the requirements of Standard 209.[2] Belts for the driver and the right front seat passenger are required to meet the injury criteria of Standard 208.[3]

No objection is made by the petitioner to the requirements of the interlock system as such. To the contrary, Notice 16 was adopted in response to the requests of this petitioner and other foreign and domestic manufacturers as an alternative to the premature adoption of passive restraints and as a means to accomplish a greater rate of seat belt usage.[4] The only objection raised to the requirements of Notice 16 is the requirement that the front outboard seat belt systems meet the injury criteria of Standard 208 rather than the traditional seat belt requirements of Standard 209. Since the challenged amendment requires the same test procedure for the front outboard positions which was found lacking in objectivity in *Chrysler*, the parties recognize that *Chrysler* is dispositive of this case. There is a disagreement, however, as to the proper disposition of this case in light of the conclusions reached in the passive restraint litigation.

Ford contends that the standard, in the absence of the injury criteria, provides no method of testing the belts at the front outboard positions, and that therefore the entirety of Notice 16 must be remanded to the Agency for the promulgation of objective testing procedures. The Agency's position is that the standard provides that belts which are not required to meet the injury criteria must meet the requirements of Standard 209, and that this applies to the front outboard positions in the situation of invalidated injury criteria.

The genesis of the contested requirement is helpful to a resolution of the disagreement. Notice 13, 36 F.Reg. 19266, in which the interlock option was first proposed, provided that belts at the front outboard positions were to meet both the requirements of Standard 209 and the injury criteria of Standard 208. In Notice 16, the Agency amended the proposal in response to comments received from manufacturers to provide that the belts which are required to meet the injury criteria need not meet the requirements of Standard 209. In the comments accompanying the issuance of Notice 16, the Agency noted:

" . . . it has been decided to accept the suggestion made in a number of comments that conformity to Standard No. 209 should not be required of belt systems that meet the injury criteria. Accordingly, those options that require a seat belt to meet the injury

---

2. Standard 209 (49 C.F.R. § 571.209) is an extremely complete series of regulations specifying in considerable detail virtually every aspect of seat belt manufacture and performance, from colorfastness to resistance to micro-organisms. The standard also dictates requirements for the width of the webbing and the breaking strength, maximum permissible elongation under specified forces, and other performance requirements to assure that the belts will perform as intended. Seat belt systems have been meeting the requirements of Standard 209 since February 28, 1967.

3. The testing procedure, the injury criteria and the anthropomorphic test device are discussed completely in *Chrysler*, and need not be repeated here. The injury criteria are the readings obtained from the instrumented test dummy in a test impact; since the test device has been declared in-

valid, the injury criteria can also be said to be invalid, and for the purposes of this opinion, we do not need to distinguish between these two separate elements of Standard 208. Although the requirements of Notice 16 were amended in some respects by subsequent notices 19, 20, 23 and 24 (37 F.Reg. 12393, 13265, 22871, and 23115) the requirement under consideration, that front outboard belt systems meet the injury criteria, remains unchanged.

4. The record in *Chrysler* indicated that present user rates for lap belts is about 20 to 30% and for the lap and shoulder belt combination about 1 to 5%. Some estimates project that devices such as ignition interlocks may increase usage rates for the lap and shoulder combination up to about 60%.

criteria (S4.1.1.2, S4.1.2.2, and S4.1.2.-3) are amended by limiting the application of Standard No. 209 to belts other than those meeting the injury criteria." 37 F.Reg. 3911.

 Although the specified test device was declared invalid in the passive restraint litigation, all other portions of Standard 208 were found valid and remain in effect, providing, of course, that they do not depend for their effectiveness upon the use of the anthropomorphic test device. Similarly, the only requirement of Notice 16 that is invalid is the requirement that the front outboard seat belts be tested with the injury criteria. All other portions of Notice 16 are valid and remain in effect; this includes that part of the amendment that requires that seat belts with ignition interlocks be provided for all front seat occupants. This Court is reticent to remand a part of the standard which has not heretofore been challenged, either during the course of the Agency's rule-making process or in the petition for review herein considered.

In light of the material contained in the record concerning the projected effectiveness of ignition interlocks as a means of increasing seat belt usage, and in light of the comments of this petitioner and others to the Agency urging the adoption of such a requirement, and in light of the fact that no objection has been or is now made to the requirement of the ignition interlock system itself, this Court will not remand this part of the Standard to the Agency for further consideration. Such an order would serve only to delay the effective date of the ignition interlock system, the validity of which is not in issue, and would effectively invalidate the present requirement that the system be installed as of August 15, 1973. Mr. Justice Cardozo once observed: "Expediency may tip the scales when arguments are nicely balanced," Woolford Realty Co. v. Rose, 286 U.S. 319, 330, 52 S.Ct. 568, 570, 76 L.Ed. 1128 (1932), and pragmatism in the present situation, which concededly approaches equipoise, may well be warranted.

Even in the wake of *Chrysler*, the remainder of Standard 208 must be presumed valid insofar as is reasonable. Accordingly, we conclude that in the absence of valid injury criteria, all seat belt systems installed in accordance with the requirements of Standard 208, including the front outboard systems, must meet the requirements of Standard 209, and so hold. Accordingly, no remand is necessary, and the petition for review is denied.

Since the disposition of this case is governed by the conclusions reached in *Chrysler*, we do not reach a consideration of and we reserve decision on the remaining contentions of the petitioner, including the contentions that injury criteria are inappropriate for the testing of seat belts and that the Agency's decision is in excess of its statutory authorization to act only to meet the need for motor vehicle safety, as defined in terms of unreasonable risks.

The petition for review is denied.