CENTURY CIRCUIT, INC., OF DELAWARE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 69345. Promulgated November 28, 1934.

*Benjamin Mahler, Esq.,* for the petitioner.
*M. B. Leming, Esq.,* and *Edward C. Adams, Esq.,* for the respondent.

### OPINION.

ARUNDELL: The petitioner, for itself and its subsidiaries, brings this proceeding for a redetermination of its tax liability for the calendar year 1930, the respondent having asserted a deficiency for that year of $16,488.94. The parties have submitted the proceeding upon stipulated facts and documentary evidence.

The petitioner is a corporation, organized April 1, 1928, under the laws of the State of Delaware. Upon incorporation it acquired all the issued and outstanding stock of 14 corporations. For the years prior to 1929 these corporations had filed separate returns, but for 1929 and 1930 consolidated returns were filed. The 1929 consolidated return reported a net loss of $356,137.81; the 1930 consolidated return reported net income of $24,915.36.

The parties have stipulated, however, that the consolidated net income for 1929 and 1930, before deducting any net losses for prior years, amounted to $7,248.79 and $349,248.69, respectively.

Net losses for eight of the affiliates in 1928 totaled $206,410.04, and three of these eight corporations had net losses in 1927. The net losses and income of these three corporations for the years 1927 to 1930, inclusive, were as follows (amounts in parentheses indicate net losses):

| | Twain Realty | Fourtown Realty | Rija Operating Corporation |
|---|---|---|---|
| 1927 | ($32,574.36) | ($59,134.57) | ($7,189.69) |
| 1928 | (67,741.73) | (55,138.76) | [1] (16,147.17) |
| 1929 | 39,002.24 | (116,986.93) | (20,291.12) |
| 1930 | 29,180.39 | 186,101.71 | 29,248.60 |

[1] Includes $7,189.69 net loss in 1927.

In determining the taxable net income of the group for 1930 respondent allowed a net loss carry-over from 1928 of $189,925.55. This amount was computed by eliminating from the 1928 total net loss of $206,410.04 the following items: the $7,189.69 net loss of the Rija Operating Corporation for 1927; the 1928 net loss of petitioner of $2,046.01, offset by nontaxable income, which adjustment petitioner does not dispute; and $7,248.79, the consolidated income of the group for 1929.

The first issue presented is the amount of the 1928 net loss which is to be carried over and applied against 1930 consolidated net income.

Petitioner contends that the 1927 net losses should be carried over and used to reduce 1929 income before resorting to the 1928 losses for that purpose, thereby leaving a greater 1928 net loss to go over to 1930 than was computed by the respondent. We are of the opinion that petitioner's view is correct. Where a corporation has net losses in two succeeding years and net income the third year, the first year's loss is carried over and used as a deduction for the third year. *Riley Stoker Corporation*, 26 B. T. A. 749, 753; *Hardinge Brothers, Inc.*, 26 B. T. A. 804, 806. Accordingly the net losses sustained by the three corporations in 1927 may be carried forward and used as a deduction in 1929. Prior to the year 1929 the application of net losses sustained before affiliation was limited to the corporation sustaining them (*Woolford Realty Co.* v. *Rose*, 286 U. S. 319), and the losses sustained during affiliation were subject to apportionment among members of the group as in *Swift & Co.* v. *United States*, 38 Fed. (2d) 365. These rules were changed for 1929 and subsequent years by the Revenue Act of 1928 and the respondent's regulations promulgated pursuant to the authority contained in section 141(b) of that act. Article 41(c) of Regulations 75 provides in substance that, in so far as the year 1929 is concerned, a net loss sustained prior to affiliation and prior to 1929 shall be allowed in computing income of the group for 1929 to the same extent and upon the same conditions as if the group income were the income of the member which had sustained the loss. This means, as we understand it, that if A and B, being separate corporations in 1927 and 1928, sustained losses in those years and one or both of them realized income in 1929 when they were affiliated, then the prior losses could be applied in full to the 1929 income. If the corporations had been affiliated in 1927 and 1928 and some had income in 1928, the apportionment method of *Swift & Co.*, *supra*, might apply, and limit the amount to be carried over; but such is not the case here, as none of the group had income in 1928. Consequently the full amount of the 1927 losses is to be carried over to 1929 and applied against income of the group for that year.

What we have said above has been without reference to the effect of intercompany dividends on the amounts of the net losses sustained in 1928. In 1928, after affiliation, the Merrick Realty Corporation received from three other members of the group dividends amounting to $27,281.73, and the Twain Realty Corporation received from the parent a dividend of $210. These amounts (plus $111.78 received by Merrick Realty prior to affiliation and not involved, upon concession of petitioner) the respondent used to reduce the net losses claimed to have been sustained by the Merrick and Twain companies. This reduction is said by petitioner to be erroneous. Petitioner's argument is that these dividends, being received after affiliation, were intercompany items and as such should be disregarded.

Section 23 (p) of the Revenue Act of 1928 allows corporations to deduct from gross income the amount received as dividends from a taxable domestic corporation. This is for the purpose of computing net income. Section 117, dealing with the subject of net losses provides, in subsection (a) (4), that: "*Dividends.*—The deduction provided for in section 23 (p) of amounts received as dividends shall not be allowed." This provision seems too plain to admit of much argument. It provides against the deduction of dividends for the purpose of computing net loss. The prohibition is not qualified by the time of the declaration or payment of dividends; it takes no account of whether they were received before or after affiliation. Whether or not dividends after affiliation are regarded for some purposes as intercompany items need not be decided here. Granting that they are, they were nevertheless income to the recipients and are to be treated as such for the purpose of computing net losses. *Helvering* v. *Post & Sheldon Corporation*, 71 Fed. (2d) 930; *Corco Oil Refining Corporation* v. *Helvering*, 72 Fed. (2d) 177; *Autocar Co.*, 31 B. T. A. 361. The statute makes no exception in favor of dividends between affiliates, and it is not within our province to do so. "Whether and to what extent deductions shall be allowed depends upon legislative grace; and only as there is clear provision therefor can any particular deduction be allowed." *New Colonial Ice Co.* v. *Helvering*, 292 U. S. 435. On this issue the respondent is sustained.

The remaining issue is whether certain payments in connection with the use of sound equipment in theaters are deductible under section 23 (a) of the Revenue Act of 1928. That section allows deductions from gross income of:

* * * rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.

In 1928 and 1929 petitioner entered into contracts with the Electrical Research Products, Inc. (a subsidiary of the Western Electric Co.) and R. C. A. Phototone, Inc., for the installation and use of sound equipment in theaters operated by three of petitioner's affiliates. These contracts granted to petitioner in each case a " non-exclusive non-assignable license to use " the equipment to be installed by the above mentioned corporations, hereinafter called the licensors. The contracts were to run for a period of 10 years, but after the first 2 years petitioner could terminate them upon notice of 6 months. Petitioner was required by the contracts to pay the cost of transportation of the equipment at its own expense, and to pay installation costs in amounts specified. Petitioner was required to pay for the use of the equipment specified amounts weekly or monthly during the first two years of the contracts and thereafter to pay according to the " then current schedules " of the licensors' charges for the use of such equipment. Petitioner was required to pay for additional equipment or renewal parts and for services rendered by the licensors during the life of the contracts. Title to the equipment remained at all times in the licensors.

In the consolidated returns filed for 1929 and 1930 deductions were claimed on behalf of petitioner's three affiliates for installation charges and the weekly or monthly payments under the contracts as follows:

|  | 1929 | 1930 |
|---|---|---|
| Gramatan Operating Co | $9, 520. 16 | $13, 000. 00 |
| F. R. A. Operating Co | 7, 291. 53 | 29, 965. 72 |
| Long Island Operating Co | 68, 893. 83 | 84, 295. 00 |
| Total | 85, 705. 52 | 127, 261. 72 |

The respondent disallowed the deductions claimed as above, but allowed deductions for amortization of the licenses at the rate of 20 percent per annum, and also allowed deductions, as expenses, for service charges in connection with the use of the equipment. The deductions so allowed are as follows:

|  | 1929 | | 1930 | |
|---|---|---|---|---|
|  | Amortization | Expenses | Amortization | Expenses |
| Gramatan Operating Co | $1, 481. 20 | $1, 847. 00 | $4, 158. 78 | $2, 240. 00 |
| F. R. A. Operating Co | 4, 690. 50 | 3, 891. 50 | 10, 002. 34 | 5, 827. 50 |
| Long Island Operating Co | 21, 161. 86 | 14, 475. 00 | 26, 385. 14 | 13, 662. 50 |
| Total | 27, 333. 56 | 20, 213. 50 | 40, 546. 26 | 21, 730. 00 |

At the hearing counsel for the respondent moved to increase the deficiency for 1930 on the ground that amortization should be allowed at the rate of 10 percent, by reason of the licenses having a 10-year life.

The evidence of both parties in support of their claims is insufficient to warrant our disturbing the respondent's determination, which is presumptively correct. All that we have is the contracts, the material provisions of which we have described above. The fact that certain payments are designated transportation or installation cost does not establish error in respondent's requiring them to be capitalized. Considering the contracts in their entirety, it appears that under them petitioner acquired a license, the cost of which may be said to be the amount expended in installation of the equipment it was licensed to use. The contracts alone do not establish affirmatively that exhaustion should be spread over 10 years rather than the 5-year period used in determining the deficiency. The natural view of course would be to consider the useful life as running for 10 years, but the respondent has determined otherwise and we cannot say he erred, particularly in view of the provisions for cancellation by either party to the contracts. As the respondent's determination is presumptively correct, we are of the opinion that he must abide its results in the absence of a clear showing of error.

As stated above, the respondent used a 20 percent rate in computing amortization, but it is not exactly clear to what he applied that rate. A revenue agent's report in evidence indicates that the basis consists of original installation costs plus at least some part of the weekly or monthly payments subsequently made for the continued use of the equipment. If so, there was error. The periodic payments required to be made after installation were clearly in the nature of rentals and come within the meaning of section 23(a) above quoted. This is a matter that may be adjusted under Rule 50. The allowance of service charges as expense deductions we hold was correct.

At the hearing counsel for respondent conceded that a payment of local taxes by one of petitioner's subsidiaries, in the amount of $1,836, for which deduction was claimed and disallowed for 1930, constituted a proper deduction for 1929. This will be reflected in the recomputation.

*Decision will be entered under Rule 50.*