## THE AMERICAN PACKING & PROVISION COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 77642.   Promulgated July 16, 1937.

*Walter G. Moyle, Esq.*, for the petitioner.
*W. Frank Gibbs, Esq.*, for the respondent.

### OPINION.

HILL: This case involves the correctness of respondent's determination of a deficiency in income tax against the petitioner of $1,980.98 for the year 1930. The petitioner is the parent of a group of five affiliated corporations, of which one was the Union Stock Yards, which was wholly owned by the petitioner. The affiliated group filed consolidated income tax returns for the years 1928, 1929, and the taxable year 1930.

In 1924 the petitioner issued $600,000 of mortgage bonds in part payment for property purchased by it. Prior to 1929 the Union Stock Yards, wholly owned affiliate of the petitioner, purchased $34,450 par value of these bonds from outsiders for a consideration of $24,428.74, and at the same time purchased accrued interest coupons for $625.86. In 1930 the Union Stock Yards sold $34,450 par value of the bonds to the trustee under the mortgage at 80 cents on the dollar, or $27,560. The trustee also purchased from outside

sources bonds of a par value of $3,050 at 80, or $2,440. Neither the petitioner nor the Union Stock Yards included any profit from the transaction in their consolidated return for the taxable year. The respondent determined a deficiency against the petitioner in the amount of $1,980.98, and fixed the profit at the difference between the amount paid by the Union Stock Yards when it purchased the bonds, and their par value, which petitioner alleges was erroneous because the transaction was an intercompany one from which no gain or loss is recognized.

The facts have been stipulated in writing and are adopted as our findings, as follows:

1. The petitioner is a corporation incorporated under the laws of the State of Utah on August 5, 1924, with its principal place of business at Ogden, Utah.

2. On August 5, 1924, petitioner issued at face value $600,000 of 6% mortgage bonds in part consideration for property purchased by it. Those bonds were issued as aforesaid under a first mortgage and collateral trust indenture.

3. In accordance with Article IV of the bond indenture, the petitioner was required to deposit $30,000 cash each year with the trustee for the purchase and redemption of said bonds.

4. The American Packing & Provision Company, the petitioner, is the parent corporation of an affiliated group of which the following named corporations are the subsidiary corporations:

American Packing & Provision Sales Company
Union Stock Yards
Western Gateway Storage Company
Ogden Union Stock Yards Company

5. Consolidated income tax returns were filed for the affiliated group for the years 1928, 1929 and 1930, the same being filed in the name of the parent corporation, the petitioner herein. All of the capital stock of the Union Stock Yards for said years was owned by The American Packing & Provision Company, petitioner.

(Note: No issue is raised in these proceedings as to the right of the affiliated group to file a consolidated return).

6. Pursuant to a resolution adopted by its board of directors, The American Packing & Provision Company, petitioner, on March 28, 1930, directed the trustee to solicit and secure offers from the holders of its bonds, and to purchase for retirement at lowest prices offered as many bonds as could be bought for $30,000. Pursuant to the action taken as aforesaid, petitioner deposited with the trustee the $30,000 in cash. Pursuant to the publication of a notice by the trustee, the Union Stock Yards, one of petitioner's affiliates, by a telegram dated May 15, 1930, offered to sell to the trustee $37,500 face value of bonds at 80, or $30,000. The trustee accepted the aforesaid offer to the extent of $34,450 face value of bonds at 80, or $27,560. The transaction was consummated, the payment being made and the bonds retired as of September 1, 1930.

In addition to the aforesaid transaction, the trustee purchased from other sources bonds of the petitioner of a face value of $3,050 at 80, or $2,440.

Of the bonds of a face value of $37,500, purchased as aforesaid by the trustee, $34,450 were purchased from said subsidiary, the Union Stock Yards, for the sum of $27,560, or a discount of 20% of face value.

7. On the purchase and redemption of said $37,500 of bonds for $30,000, petitioner reduced its outstanding bond liability by $37,500, and credited its surplus

account with the amount of $7,500, which amount was the difference between the purchase price of the bonds and their face value.

Of the aforesaid $7,500, $6,890 was the difference between the face value and the cost to the petitioner of the bonds purchased from petitioner's affiliate, the Union Stock Yards. The balance of said $7,500 is the difference between the face value and the cost to the petitioner of the bonds purchased from the other interests as aforesaid.

8. The Union Stock Yards, an affiliate of petitioner, acquired by cash purchase prior to 1929, but during periods in which affiliated returns were filed, bonds of petitioner of a face value of $34,450 for a consideration of $24,428.74, and at the same time purchased interest accrued on said bonds at a cost of $625.86. The profit shown on the books of the Union Stock Yards as a result of the sale of said bonds to the trustee was $2,505.40, computed as follows:

| | |
|---|---|
| Amount realized from sale | $27,560.00 |
| Cost, including said interest of $625.86 | 25,054.60 |
| Profit | $ 2,505.40 |

Respondent in his deficiency letter included in the taxable net income of the affiliated group for the year 1930 the profit, as set forth above, arising from the sale by the Union Stock Yards to the petitioner of bonds of the latter company, and also the profit derived by the petitioner through the acquisition of said $37,500, face value of its bonds, as set forth above, which included the purchase of petitioner's bonds of $34,450 from the Union Stock Yards and $3,050 face value of petitioner's bonds from interests outside of the affiliated group.

9. During the period for which consolidated returns were filed, as aforesaid, and during the period bonds of the petitioner corporation were acquired in open market by the Union Stock Yards at prices less than face value of said bonds, no income or profit was reported by either the said Union Stock Yards Company or the petitioner in respect of such purchases.

The petitioner does not contest the action of respondent in adding to petitioner's gross income the sum of $610 as profit realized on the purchase of $3,050 par value of bonds from outside interests.

It is the contention of the respondent that the case of *United States* v. *Kirby Lumber Co.*, 284 U. S. 1, applies here and that the purchase of these bonds was not an intercompany transaction. Petitioner admits that if there were no affiliation and no filing of consolidated returns the profit would be taxable under the *Kirby Lumber Co.* case, *supra*, but contends that on account of affiliation and consolidated returns this was an intercompany transaction and under regulations of the respondent no gain is recognizable.

In *United States* v. *Kirby Lumber Co.*, *supra*, it was held that where a corporation purchased bonds theretofore issued by it at a price less than the issuing price, making clear gain, and there was no shrinkage of assets, the difference was gain or income for the taxable year. This case applies here unless it was such an intercompany transaction as resulted in no recognizable gain under respondent's Regulations 75.

Section 141 of the Revenue Act of 1928 granted the privilege to an affiliated group of corporations of making a consolidated return on condition that all joining in such return consent to regulations prescribed by the Commissioner, who was given the power to prescribe such regulations with the approval of the Secretary.

Article 31 (a) of Regulations 75, mainly relied on by the petitioner, reads:

Except as otherwise provided in these regulations, the consolidated net income of an affiliated group, which makes or is required to make a consolidated return for any taxable year, shall be the aggregate of the gross income of each of the members of such group, less the aggregate of the allowable deduction of each of such members, except that gain or loss will not be recognized upon transactions between members of the group (referred to in these regulations as "intercompany transactions").

Article 33 provides in substance that gain or loss from the sale or other disposition by a member of an affiliation of stocks or bonds issued by another affiliated member shall be determined as if no affiliation existed, except (1) "In the case of a disposition (by sale, dissolution, or otherwise) during a consolidated return period to another member of the affiliated group."

Petitioner relies upon the above articles of Regulations 75 and *Chicago, Rock Island & Pacific Railway Co.*, 13 B. T. A. 988; 47 Fed. (2d) 990; *Old Mission Portland Cement Co.* v. *Helvering*, 293 U. S. 289; *Gulf, Mobile & Northern Railroad Co.* v. *Helvering*, 293 U. S. 295; and *Southern Railway Co.* v. *Commissioner*, 74 Fed. (2d) 887.

The *Chicago, Rock Island & Pacific Railway Co.* case, *supra*, was decided prior to the *Kirby Lumber Co.* case, and the promulgation of Regulations 75. In that case the taxpayer had purchased from the public the outstanding bonds of a coal company of the face value of $2,336,000, for $2,022,011.85. Subsequently the taxpayer acquired all the capital stock of the coal company, they became affiliated and filed a consolidated return. During the affiliation and in the period for which the consolidated return was filed, the coal company retired the bonds, but it does not appear for what sum. The Commissioner determined a deficiency based on the difference between the par value of the bonds and the amount the taxpayer paid for them prior to the affiliation. The Board held in part:

It is clear petitioner made no gain at the time it purchased bonds at a discount; neither did the Coal Company lose anything by reason of the transaction. No funds of either company were used during the period of affiliation to purchase the outstanding obligations of the Coal Company. It appears that there was no affiliated group in existence at the dates of the purchases to which the purchases might be attributed. Petitioner, as a distinct taxable entity, purchased the bonds and subsequently brought them into the affiliation, at which time they became intercompany obligations, the payment or collection of which produced neither income nor loss.

This case went to the Circuit Court of Appeals, Seventh Circuit, and was reversed on another point.

We do not think the above case is decisive of the instant case. The controlling reason for the decision seems to be that the purchase of the bonds by the taxpayer was made before there was any affiliation and that no funds of the affiliated group were used in the purchase of the bonds. In the instant case, the bonds were purchased during the affiliation and were paid for with funds of the affiliated group and the affiliated group undoubtedly made a profit under the *Kirby Lumber Co.* case.

The other cases cited and relied upon by petitioner involve the question of annual amortization of discount on sale of bonds and it was held that such amortization was not allowable as a deduction in a consolidated income tax return, where the bonds were held by an affiliated company. This was because they were intercompany transactions. It is not believed that these cases are applicable or controlling, as the transactions there did not result in a profit to the affiliated group and the transactions seem to have been purely intercompany. In the instant case the affiliated group derived a profit by its dealing with persons outside of the affiliated group.

The permission to file consolidated returns "was to provide a method of computing the tax upon the true net income of what is in practical effect a single business enterprise, with substantially common ownership, as though it were that of a single taxpayer." *Old Mission Portland Cement Co.* v. *Helvering*, 293 U. S. 289. The regulations relative to consolidated returns and intercompany transactions were designed to prevent the shifting of gains or losses from one member to another so as to prevent distortion of correct income. There was no purpose to relieve an affiliated group of profits derived from transactions with strangers. *Burnet* v. *Aluminum Goods Manufacturing Co.*, 287 U. S. 544.

In the last cited case the taxpayer was the owner of the entire capital stock of its subsidiary. The stock of the latter became worthless and in addition the taxpayer made numerous advances to the subsidiary, which were not repaid. The taxpayer claimed these losses as deductions on a consolidated return, but it was held by the Commissioner that they were not allowable because they were intercompany transactions. In holding that the losses were allowable the Supreme Court said in part:

These provisions plainly do not lay down any rigid rule of accounting to be applied to consolidated returns which would exclude from the computation of taxable income the results of every intercompany transaction, regardless of its effect upon the capital or the net gains or losses of the business of the affiliated corporations. Instead, they merely disclose the purpose underlying regu-

lations and statute to prevent, through the exercise of a common power of control, any intercompany manipulation which would distort invested capital or the true income of the unitary business carried on by the affiliated corporations. Hence no method of accounting, in calculating taxable income upon the consolidated return, can be upheld, which would withhold from the taxpayer all benefit of deduction for losses actually sustained and deductible under the sections governing the computation of taxable income, and which at the same time would not further, in some way, the very purpose for which consolidated returns are required.

\* \* \* \* \* \* \*

The loss was a real one, suffered by respondent as a separate corporate entity, and it was equally a loss suffered by the single business carried on by the two corporations during the period of their affiliation, ultimately reflected in the 1917 loss of capital invested in that business. While equitable principles of accounting applied to the calculation of the net income of the business unit do not permit the deduction of the loss twice, they do require its deduction once. Hence the loss was deductible in 1917 under the statute and regulations controlling computation of taxable income, and its deduction is not forbidden by the regulations applicable to the consolidated return. Articles 77 and 78 of Treasury Regulations 41 would, indeed, require the elimination of any losses resulting from intercompany transactions, the inclusion of which would defeat the purpose of consolidated returns to tax the true income of the single business of affiliated corporations, calculated by correct accounting methods. The deductions claimed here had no such effect.

In *Corco Oil Refining Co.* v. *Helvering*, 72 Fed. (2d) 177, where the taxpayer had all of its dealings with an affiliated member and derived a large profit, it was held that the profit was taxable, although an intercompany transaction. The court there said in part:

It is conceded that all of the transactions of the Corco Corporation were had with the Crystal Corporation and that the Corco Corporation had no dealings with any other party than the parent company. Accordingly, all of its transactions were intercompany transactions. But this fact alone does not necessarily exclude the gains or losses resulting from such intercompany transactions from the consolidated returns of the affiliated companies. The statute contains no limitation in regard to intercompany transactions, and the regulations provide for the elimination only of those intercompany transactions which do not result in any actual gain or loss. As is said in G. C. M. 8618, IX–2 Cumulative Bulletin 180: "From a practical standpoint, in determining consolidated net income it is only necessary to eliminate from the combined net incomes of the several corporations, determined separately, the unrealized profits and losses in intercompany transactions. \* \* \* To eliminate all intercompany transactions, whether or not they affect the consolidated taxable net income in determining the net income properly assignable to each member of the affiliated group, would give rather absurd results, showing large losses for some members of the group and excessive income for others." Such intercompany transactions as result in actual gains to any of the affiliated corporations must be recognized and considered in computing the net consolidated income.

The record in the present case clearly discloses that the Corco Corporation actually realized gains for the year 1928 in the amount determined by the Commissioner, and these are none the less assessable for income-tax purposes

because of the fact that the company was affiliated with the Crystal Corporation during that year. See *Burnet* v. *Aluminum Goods Co.*, 287 U. S. 544, 53 S. Ct., 227, 77 L. Ed. 484.

See also *Autocar Co.* v. *Commissioner*, 84 Fed. (2d) 772; *Briarcliff Investment Co.* v. *Commissioner*, 90 Fed. (2d) 330; *Helvering* v. *American Chicle Co.*, 291 U. S. 426; *Century Circuit, Inc., of Delaware*, 31 B. T. A. 764.

The bonds in controversy were held by and bought from outsiders by the affiliated group with funds of the affiliated group and a profit resulted to the subsidiary when it sold them to the petitioner and to the petitioner when it acquired them for redemption and cancellation at less than par.

It is clear to us that this was not such an intercompany transaction as escapes recognition of gain or loss. It was a purchase of outstanding bonds from outside holders by the affiliated group at less than par and is governed by the *Kirby Lumber Co.* case. If the transfer from the subsidiary to the petitioner was an intercompany transaction it resulted in real gain and, under the *Aluminum Manufacturing Co.* and *Corco Oil Refining Co.* cases, *supra*, should be included in taxable income. To hold otherwise, would render it easy for affiliated groups to evade the ruling in the *Kirby Lumber Co.* case.

Responding to the suggestion of petitioner that the gain was made prior to 1930, when the subsidiary acquired the bonds, it is sufficient to say that the subsidiary was not the obligor. No profit was made by the subsidiary until it sold the bonds in 1930, and none was made by the petitioner until it acquired them in the same year. *Garland Coal & Mining Co.* v. *Helvering*, 75 Fed. (2d) 663, is not in point, for there the obligor acquired them in the earlier year.

Reviewed by the Board.

*Decision will be entered for the respondent.*